# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CR. NO. 1:20-cr-10001 |
| | ) |
| OCTAVIO CAMACHO NUNEZ, | ) |
| | ) |
|     Defendant. | ) |

## MOTION TO SUPPRESS

**COMES NOW,** Claiborne H. Ferguson, counsel for Defendant, and hereby files this Motion to Suppress the fruits of an illegal search conducted on defendant on or about December 3, 2019 in Weakley County, Tennessee.

### FACTS

On or about December 3, 2019, sheriffs' deputies of the Weakley County Sheriff's Department received a report from the Hickman County Sheriff's Department that "a man had pulled a gun on someone" in Hickman county, Kentucky and was in route to Weakley County, Tennessee. The report to the Hickman County Sheriff's office was allegedly from Stephanie Morgan who reported that her daughter's boyfriend pulled a gun on her in Kentucky. Based on this information alone, deputies were dispatched to 251 Hazelwood Road, Martin, Tennessee where Nunez lived.

Officers arrived and without any additional information, guns drawn, took Mr. Nunez into custody and search the premise and the car. There was nothing incriminating when officers arrived; they were acting totally at the request of the Kentucky authorities. The deputies located

an airsoft gun in the garage and a .380 under the seat of the car.  Later, Ms. Morgan "made a positive identification of the [.380] as being the gun that was pointed at her and her husband."

## LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999) (internal citation omitted).  A warrantless arrest is reasonable when the officer has probable cause to believe the arrestee has committed a felony and the arrest occurs in a pu blic place. See *United States v. Watson*, 423 U.S. 411, 417-24, (1976); *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006)("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed."). To determine whether probable cause to arrest exists, the court "must examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366 (2003)(quoting *Ornelas v. United States*, 517 U.S. 690  (1996)). The Supreme Court has stated that the probable cause standard is "'incapable of precise definition," but that "[t]he substance of all the definitions . . . is a reasonable ground for belief of guilt, . . . and that belief of guilt must be particularized with respect to the person to be searched or seized.'" *Id.* (quoting *Ybarra v. Illinois*, 444 U.S. 85 (1979)).

It is well-established that an officer may conduct a stop based on information obtained by

fellow officers. *United States v. Barnes*, 910 F.2d 1342, 1344 (6th Cir. 1990) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)). Variously called the "collective knowledge" or "fellow officer" rule, this doctrine recognizes the practical reality that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *Hensley*, 469 U.S. at 231 (quotation omitted). Because officers "must often act swiftly [and] cannot be expected to cross-examine their fellow officers about the foundation of transmitted information," we impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop. *Id*. at 230-3; see also *Whiteley v. Warden*, 401 U.S. 560 (1971). Whether conveyed by police bulletin or dispatch, direct communication or indirect communication, the collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion. *Dorsey v. Barber*, 517 F.3d 389, 396 (6th Cir. 2008); *Smoak v. Hall,* 460 F.3d 768, 779 (6th Cir. 2006). By imputing the investigating officer's suspicions onto the responding officer, without requiring the responding officer to independently weigh the reasonable suspicion analysis, the collective knowledge doctrine "preserves the propriety of the stop" and avoids crippling restrictions on our law enforcement. *United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999).

Despite its flexibility, the collective knowledge doctrine is not without its restrictions. The doctrine's primary boundary is, of course, the Fourth Amendment itself. As with any traditional investigative stop, a traffic stop based on collective knowledge must be supported by a proper basis and must remain reasonably related in its scope to the situation at hand. See *United States v. Davis,* 430 F.3d 345, 354 (6th Cir. 2005). Accordingly, if an investigating

officer "lacked sufficient information to satisfy the reasonable suspicion requirement, and the [responding officer's] subsequent observations did not produce reasonable suspicion," then the stop violates the Fourth Amendment. *Feathers v. Aey,* 319 F.3d 843, 849 (6th Cir. 2003). Likewise, if a responding officer exceeds the stop's scope because he was not provided with the facts necessary to stay within its proper bounds, then any evidence improperly obtained therefrom remains subject to the exclusionary rule, just as if the investigating officer committed the error. See, e.g., *United States v. Pineda-Buenaventura*, 622 F.3d 761, 776 n.5 (7th Cir. 2010) (finding that the exclusionary rule "remain[ed] in play" when supervisors failed to communicate the proper bounds of a search warrant to executing officers). The taint of a stop effected without reasonable suspicion similarly cannot be cured by an after-the-fact relay of information. See *Blair*, 524 F.3d at 751-52. Applying traditional Fourth Amendment restrictions equally to the collective knowledge doctrine ensures that communications among law enforcement remain an efficient conduit of permissible police activity, rather than a prophylactic against behavior that violates constitutional rights.

In the case at bar, officers in Kentucky lacked the necessary reliable information to justify probable cause. Furthermore, Kentucky officers did not provide the probable case that Tennessee law enforcement could rely on. Other than the bare allegation that a crime took place, no other information existed for a reasonable officer to believe a crime had occurred. Furthermore, as the alleged crime took place in another state, the Weakley County Sheriff's Office was not authorized to investigate the alleged crime that occurred in Kentucky, nor did they have a valid Mutual Aid Agreement.

Based on the above facts and law, Defendant moves this Court to suppress the evidence obtained in his illegal arrest and search.

Respectfully submitted,

**The
CLAIBORNE FERGUSON
Law Firm, P.A.**
294 Washington Avenue
Memphis, Tennessee 38103
(901) 529-6400
claiborne101@yahoo.com

/s/ Claiborne H. Ferguson
CLAIBORNE H. FERGUSON (20457)
Attorney for Defendant

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the foregoing document has been served upon all concerned parties, via the Court's electronic filing system, this the 2nd day of March 2020.

s/Claiborne H. Ferguson
CLAIBORNE H. FERGUSON